FOURTH DIVISION
January 21, 2010

No. 1-08-3636

| | | |
|---|---|---|
| DOROTHY SMITH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff, | ) | Cook County |
| | ) | |
| v. | ) | No. 06 L 11238 |
| | ) | |
| WEST SUBURBAN MEDICAL CENTER, Defendant and | ) | Honorable |
| Third-Party Plaintiff-Appellee (Triton College Foundation, | ) | Lynn Egan |
| d/b/a Triton Community College, Defendant and Third- | ) | Judge Presiding. |
| Party Defendant-Appellant; Kilume Nkulu, Defendant). | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

This is an action based on ordinary negligence. Plaintiff, Dorothy Smith, filed a complaint against several defendants, including defendant/third-party plaintiff-appellee, West Suburban Medical Center (West Suburban), and defendant/third-party defendant-appellant, Triton College Foundation, d/b/a Triton Community College (Triton), alleging that she was injured when she fell off a stool in West Suburban's X-ray room. Smith's complaint contained allegations against defendant, Kilume Nkulu, a Triton student. West Suburban sought indemnification from Triton based upon a written agreement between the two parties that contained a dual indemnification

clause, which provided that Triton would indemnify West Suburban for any losses it incurred arising out of the activities of Triton students. The circuit court granted West Suburban's motion for summary judgment. Triton now appeals. We affirm.

## I. BACKGROUND

On November 18, 2005, plaintiff in the underlying complaint, Dorothy Smith, went to the emergency room at West Suburban, complaining of pain in her hands. Smith was escorted into the X-ray room by Nkulu, a Triton student participating in a clinical training program at West Suburban. Once she was in the X-ray room, Smith sat on a stool with wheels and subsequently fell off, allegedly incurring injuries.

On October 25, 2006, Smith filed a two-count complaint against several defendants, including West Suburban Medical Center, Triton, and Nkulu. Count I of the complaint contained allegations of negligence against Nkulu, both individually and as an "employee" of Triton. In count II of the complaint, Smith asserted that Nkulu was an "apparent agent" of West Suburban and alleged that West Suburban was vicariously liable for Nkulu's alleged negligence. Specifically, Smith alleged that Nkulu breached his duty, and that he did, or failed to do, one or more of the following in a careless or negligent manner:

"a. Directed [Smith] to sit on a chair with wheels and lean over the x-ray table;

b. Failed to provide the [Smith] with an appropriate chair for the x-ray procedure;

c. Failed to adequately and appropriately monitor the [Smith]; [and]

d. Failed to warn [Smith] of the tendencies of the chair with wheels on it to tip over."

Apart from seeking recovery from West Suburban under the theory of vicarious liability, Smith's

1-08-3636

complaint contained no other allegations of negligence against West Suburban.

Pursuant to section 2–622 of the Code of Civil Procedure (735 ILCS 5/2–622 (West 2006)), both West Suburban and Triton filed motions to dismiss Smith's complaint. The trial court denied these motions based upon Smith's stipulation that medical judgment would not be a part of the case and that Smith's allegations involved premises liability and ordinary negligence.

On April 25, 2007, West Suburban filed its answer to count II of the complaint, generally denying all material allegations, and specifically denying that Nkulu was its apparent agent. West Suburban also asserted, as an affirmative defense, that Smith had a duty to exercise ordinary and reasonable care for her own safety and that she negligently failed to do so by, among other things, ignoring Nkulu's instructions and taking it upon herself to sit on the stool in question. In addition, West Suburban filed a second affirmative defense that Smith's conduct was the sole proximate cause of her alleged injuries.

On May 1, 2007, Nkulu filed an answer to counts I and II of Smith's complaint. Nkulu admitted that he was Triton's student on the day in question, but denied that he was either Triton's employee or West Suburban's apparent agent during the relevant time period. Additionally, Nkulu asserted an affirmative defense that Smith's own carelessness and negligence contributed to her alleged injuries. Specifically, he alleged that she failed to keep a proper look out for her own safety, failed to make a reasonable inspection of the stool before she sat down, failed to look where she was sitting, sat in a stool not designated for patients, and failed to follow his advice and instructions. Nkulu also contended that, because Triton was a "local public entity" under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS

3

1-08-3636

10/1–101 *et seq.* (West 2006)), he was immune from liability under various provisions of that statute.

Also on May 1, 2007, Triton filed its answer to count I of Smith's complaint. Triton admitted that Nkulu was its student, but denied that Nkulu was its employee. In addition, Triton asserted several affirmative defenses which were similar to those asserted by Nkulu, as described earlier.

Previously, on May 31, 1995, Triton and West Suburban had entered into an agreement, for the sole and limited purpose of providing clinical training in several programs to Triton students, under the auspices of West Suburban (the Cooperative Agreement). Pursuant to the Cooperative Agreement, no employee-employer relationship was created between the Triton students and West Suburban. The Cooperative Agreement also contained a dual indemnification clause whereby West Suburban and Triton agreed to hold each other harmless for their own activities.

On November 19, 2007, West Suburban filed a counterclaim[1] against Triton. West Suburban sought, among other things, to enforce a contractual right to indemnification pursuant to the Cooperative Agreement.

---

[1]West Suburban correctly notes that it mislabeled the counterclaim as a third-party complaint/cross-claim and further notes that, since Triton was already a party, the correct title would have been counterclaim. We agree with West Suburban that this mislabeling has no bearing on the issue on appeal.

1-08-3636

On May 12, 2008, West Suburban filed a motion for summary judgment pursuant to section 2–1005 of the Code of Civil Procedure (735 ILCS 5/2–1005 (West 2006)). West Suburban asserted that, pursuant to the Cooperative Agreement, Triton was clearly obligated to indemnify West Suburban for any litigation and indemnification costs arising out of the activities of its students, including Nkulu. West Suburban further contended that Smith had not pled any allegations of direct negligence against it but, instead, Smith had asserted a claim against West Suburban arising solely out of Nkulu's purported activities on the date in question. West Suburban asserted that the Cooperative Agreement was clear and unambiguous concerning Triton's indemnification responsibilities under such circumstances.

On August 21, 2008, Triton responded to West Suburban's summary judgment motion. Citing its Radiologic Technology Program Student Handbook and Clinical Instructor Handbook, Triton contended that West Suburban supervised all who participated in the clinical training program conducted on its premises. Triton further asserted that Nkulu was under the control, supervision, and direction of West Suburban at all times while he was on the West Suburban premises.

Triton argued that, because West Suburban had sole control over its X-ray room facilities, specifically, the chairs, stools, floors, and other equipment contained in its X-ray rooms, and because Nkulu was under West Suburban's control, supervision and direction at all relevant times, a genuine issue of material fact existed as to: (1) whether Nkulu was acting as West Suburban's apparent agent when Smith's alleged injuries occurred; and (2) whether Smith's injuries were caused by West Suburban's own negligence in failing to maintain its X-ray room in a reasonably

5

1-08-3636

safe condition.

On September 3, 2008, West Suburban filed a reply in support of its motion for summary judgment. West Suburban reiterated that Smith sought relief against it based solely upon Nkulu's alleged conduct on the date in question. West Suburban asserted that no alternative, direct tort theory of liability, including premises liability, had been asserted against it and that West Suburban faced liability only for Nkulu's activities. West Suburban also contended that Smith's erroneous allegations of apparent agency did not, and could not, dictate whether the indemnification provision of the Cooperative Agreement was triggered. Further, West Suburban argued that to deny its motion for summary judgment would require the trial court to not give effect to the intent of the parties as clearly expressed in the Cooperative Agreement, and the intent was to ensure that West Suburban did not incur any liability for the activities of Triton students who participated in the clinical training program.

On December 1, 2008, the circuit court granted West Suburban's motion for summary judgment. On the same day, the trial court found that its order was a final and appealable order pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). This timely appeal followed.

II. ANALYSIS

We apply *de novo* review to the circuit court's entry of summary judgment. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). In reviewing a motion for summary judgment, the trial court is required to consider affidavits, depositions, admissions, exhibits, and pleadings on file and to construe them strictly against the moving party and liberally in favor of the nonmoving party. *In re Estate of Hoover*, 155 Ill. 2d 402, 410-11 (1993).

6

1-08-3636

Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

The issue in this appeal involves the interpretation of a contract. The interpretation of a contract, similar to the grant of summary judgment, is a question of law to which this court applies a *de novo* standard of review. *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 450 (2007); *First Midwest Bank v. Thunder Road, Inc.*, 359 Ill. App. 3d 921, 923 (2005).

In construing a contract, this court is guided by the following well-established principles. When interpreting a contract, a court's objective is to ascertain and give effect to the intent of the parties. *Carey v. Richards Building Supply Co.*, 367 Ill. App. 3d 724, 726-727 (2006). The plain language of a contract provides the best evidence of the parties' intent. *Carey v. Richards Building Supply Co.*, 367 Ill. App. 3d at 727. This court construes a contract as a whole, and the construction should be a natural and reasonable one. *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 388 Ill. App. 3d 81, 92 (2009). Moreover, a contract is construed in accordance with the ordinary expectations of reasonable people. *Suburban Auto Rebuilders*, 388 Ill. App. 3d at 92.

In the instant case, the Cooperative Agreement provides, in pertinent part, as follows:

"Triton agrees to hold harmless and indemnify West Suburban against any losses, damages, judgments, *claims*, expenses, costs and liabilities imposed upon or incurred by or asserted against West Suburban, including reasonable attorney's

7

fees and expenses, arising out of its activities or the activities of its officers, agents,

*students*, faculty or employees, under this Agreement." (Emphasis added.)

As with any other contract, when interpreting an indemnification agreement, a court must give effect to the intention of the parties as determined from the language of the agreement. *LID Associates v. Dolan*, 324 Ill. App. 3d 1047, 1071 (2001). Under the plain language of the Cooperative Agreement, Nkulu is a covered student. Furthermore, under the plain language of the Cooperative Agreement, Triton agreed to indemnify West Suburban for, among other things, claims arising out of the activities of its students.

Despite the undisputed fact that Nkulu was a Triton student at the time of Smith's visit to West Suburban's emergency room, Smith's complaint does not refer to this fact and, instead, erroneously characterizes Nkulu as Triton's "employee," as well as characterizing him as West Suburban's "apparent agent." Irrespective of Smith's beliefs or allegations regarding Nkulu's role or status, it is undisputed that he was, at all relevant times, one of Triton's "students." All of his activities were performed as a Triton student.

As West Suburban correctly notes, the Cooperative Agreement plainly states that Triton will indemnify West Suburban for "claims." Although Smith has not yet proved her allegations, nor has there been any judgment against West Suburban, there has been a claim. Moreover, Smith's claim is that her injuries were caused by Nkulu's activities. She has made no claim that West Suburban directly, or through any other employee, breached its duty. Instead, Smith specifically alleges that Nkulu breached "his" duty and that "he" did, or failed to do, one or more of the actions listed in her complaint. These are the only allegations against West Suburban and

1-08-3636

they are all based upon Nkulu's activities.

Triton has suggested that the mere presence of the stool in the radiology department constituted negligence by West Suburban. Smith, however, has not raised such a claim. Moreover, Nkulu testified at his deposition that he was familiar with a wheeled stool being present in *every* X-ray room where he has worked, and that the stools are for physicians to sit on during examinations. Furthermore, Smith's complaint contains no allegations that the stool was defective or inherently dangerous. Also, during her deposition, Smith conceded that she looked at the stool before she sat down, and she was not aware of the stool having any defects.

In her answers to interrogatories, Smith specifically stated that her fall was caused by "gravity, inertia, and physics." She additionally stated that she based her allegations on the fact that she should not have been told or instructed "to lean over an x-ray table while seated on a wheeled stool." In sum, all of Smith's allegations are directed against the activities of Nkulu, who it is undisputed was a Triton student covered under the Cooperative Agreement. Under the plain language of the Cooperative Agreement, Triton must indemnify West Suburban for this claim, which arises out of the activities of a Triton student.

Triton argues, however, that because Smith's complaint has characterized Nkulu as an "apparent agent" of West Suburban, and further, because the parties have agreed to indemnify each other for claims arising out of the activities of their "agents," Triton is not required to indemnify West Suburban. Triton asserts that the use of the word "agent" includes "apparent" agents. We disagree.

The Cooperative Agreement explicitly provides that all students enrolled at Triton who

9

participate in the clinical training program at West Suburban are referred to therein as "students." Thus, the Cooperative Agreement does not contemplate that a Triton "student" could also assume a role as West Suburban's "agent" for indemnification purposes, as Triton suggests. Clearly, the plain language of the indemnification provision in the Cooperative Agreement expresses the intent to protect the hospital from the potential exposure it would face by allowing students to train on its premises. We agree with West Suburban that, if the assumption of dual roles were possible, the designation of all program participants as "students" in the Cooperative Agreement would be rendered meaningless. Courts will construe a contract reasonably to avoid absurd results. *Suburban Auto Rebuilders*, 388 Ill. App. 3d at 92.

Plaintiff's allegations of apparent agency do not change or eliminate Triton's indemnity obligations under the Cooperative Agreement. Those allegations do not change the unambiguous terms of the Cooperative Agreement which provide that West Suburban is not to incur any liability for the activities of Triton students who participate in the clinical training program. The instant case involves solely a claim against West Suburban for vicarious liability for the activities of Nkulu, a Triton student. Merely because West Suburban, from Smith's perspective, assumed a supervisory role over Nkulu while he participated in a clinical training program does not render Nkulu an "agent" of West Suburban, as that term is used in the Cooperative Agreement. To accept Triton's argument would require this court to ignore Nkulu's designation as a "student" under the Cooperative Agreement. Triton cannot merely adopt plaintiff's characterization of Nkulu as an apparent agent of West Suburban in order to relieve itself of its indemnity obligations – clearly expressed in the Cooperative Agreement – for claims arising out of the activities of

Triton students. Regardless of Smith's characterization of Nkulu as an "apparent agent,"it is undisputed that he was a Triton student and the plain language of the Cooperative Agreement requires Triton to indemnify West Suburban for the claim arising out of this student's activities.

### III. CONCLUSION

For all of the foregoing reasons, we affirm the decision of the circuit court granting summary judgment to West Suburban.

Affirmed.

O'BRIEN and NEVILLE, JJ., concur.