**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 15, 2021[*]
Decided December 17, 2021

**Before**

DAVID F. HAMILTON, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-1359

| | |
|---|---|
| TRUDY TAYLOR, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 18 C 7874 |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO and KAREN SAFFOLD, *Defendants-Appellees*. | Matthew F. Kennelly, *Judge*. |

**O R D E R**

Trudy Taylor was removed from two positions as a public school principal in Chicago. She sued the Board of Education of the City of Chicago for, among other things, breach of contract and violating wage laws. She also sued a supervisor

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

individually for discriminating against her based on her race. The district court concluded that Taylor lacked evidence to support her claims. It granted the defendants' motion for summary judgment, denied Taylor's motion for reconsideration, and ordered Taylor to pay costs, despite her assertion of poverty. We affirm each of these rulings.

## I.

We recount the facts in the light most favorable to Taylor, noting disputed facts where relevant. *See Swyear v. Fare Foods Corp.*, 911 F.3d 874, 877 (7th Cir. 2018). Taylor, an African-American woman, contracted with the Board to serve as the principal for Jesse Owens Elementary Community Academy, a school serving students in kindergarten through third grade. Taylor's contract ran from June 2012 to June 2016, but it provided that the Board could remove her if the school closed or permanently merged "into another attendance center."

The Board discharged Taylor on June 30, 2013, when, according to the Board, it closed Owens Academy and combined its attendance area with that of nearby Samuel Gompers Fine Arts Options Elementary School—until then, a fourth-to-eighth-grade school. The two school buildings continued to house the same grades and serve the same student bodies but were considered separate campuses of a single school. The combined school was called Gompers at first, but later it was renamed Owens Academy (when, precisely, is in dispute). Because it still served the same students under the same name, Taylor disputes that the Owens Academy where she worked "closed." But, in her deposition, Taylor admitted that Owens permanently "merged with" Gompers "because the two schools became one."

Taylor then became an interim principal, and in June 2015, she was assigned temporarily to George Washington Carver School. The Board considered Taylor (like any interim principal) to be an at will employee with no contract. But Taylor asserts in her affidavit that Krish Mohip, then the deputy chief of the network of schools that included Carver, "promised" her that she "should expect" to work there for "at least one year."

Soon after Taylor started, Karen Saffold became the chief of Carver's school network. Saffold had numerous critiques of Taylor's job performance, and she and Taylor had a contentious relationship. In late 2015, Taylor interviewed to become the permanent principal at Carver. After she did not get the job, the Board removed her

from her interim position on January 20, 2016. The Board asserts that it removed Taylor because her performance was unsatisfactory and that Janice Jackson, then the Chief Education Officer of Chicago Public Schools, made the final recommendation to the Board to terminate Taylor. Taylor asserts that it was Saffold's decision.

Taylor sued the Board for breaching her written employment contract to be the principal of Owens Academy; breaching an implied contract to be the principal of Carver School for one year; and violating the Illinois Wage Payment and Collection Act by failing to pay her wages through June 2016. Taylor also sued Saffold in her individual capacity under 42 U.S.C. § 1981 for violating her right of equal protection by discriminating against her based on her race. Taylor's several other claims, including one under 42 U.S.C. § 1983 against the Board and Saffold, are not at issue in this appeal, so we need not elaborate on them.

The district court entered summary judgment for the Board on all of Taylor's federal claims, as well as her state contract and Wage Act claims, but it declined to exercise supplemental jurisdiction over any other state-law claims. The court deemed it beyond dispute that Owens Academy had merged "into" Gompers School—triggering the contractual condition allowing the Board to fire Taylor—because Taylor stated in her deposition that Owens permanently merged "with" Gompers. The court also determined that Taylor failed to raise a genuine issue of material fact about whether she had an implied contract with the Board for a one-year post at Carver School, and that Taylor could not proceed against Saffold individually under § 1981. Later, the court denied Taylor's motion to reconsider its summary judgment ruling and granted the Board's motion for entry of a bill of costs, despite Taylor's request to be excused due to indigence.

## II.

We review the district court's grant of summary judgment de novo. *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021). On appeal, Taylor first contends that the court misinterpreted her deposition testimony to conclude that the Board did not breach her Owens Academy contract. Admitting that Owens merged "with" Gompers, she argues, is different from admitting that Owens merged "into" Gompers. She states—citing no contractual definitions or Board materials—that "merged with" means both schools remain open and become a single unit, while "merged into" means one school ceases to exist because the other absorbs it. She further argues that the Board did not merge Owens "into" Gompers because the Board's written resolution to close

Owens did not contain the word "into"—in contrast to its resolution about another set of schools that combined.

Taylor offers no evidence that there is a material distinction between a school merging "with" and merging "into" another school. Under the contract—which the parties agree is governed by Illinois law—the Board could discharge Taylor upon the "closure of [Owens] or the permanent merger of [Owens] into another attendance center." Taylor's interpretation—requiring that a school close for it to merge "into" another school—is inconsistent with the disjunctive "or" and renders the separate closure clause superfluous. *See Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014*)* (Illinois courts avoid constructions that render a provision superfluous). And even if her admission that Owens Academy merged "with" Gompers School is not dispositive, there is no evidence to support Taylor's contention that a merger "into" never happened; Taylor offers only her opinion. That is insufficient to dispute the Board's evidence that there was a merger because Owens Academy ceased to exist independently, its attendance area was combined with that of Gompers, and the new combined school had a single principal.

Further, the Board's resolution announcing its plan to merge another set of schools "into" each other does not help Taylor. As we have noted, she lacks evidence that "into" and "with" require different meanings, and we are skeptical that the contract compels such a distinction. Taylor's argument that the Board acts differently when it merges one school "into" another than it did here does not change our view. A single instance of using the word "into" hardly establishes a modus operandi. And in the other resolution, the merger "into" occurred by combining the attendance areas of the two schools. That is precisely what the Board did with Owens and Gompers. Yet Taylor does not explain why one constitutes a merger "into" and the other a merger "with." In short, Taylor failed to raise a genuine dispute of fact over whether a contingency allowing her termination—a permanent merger—occurred.

Taylor next argues that, for either of two reasons, summary judgment was improper on her claim that the Board breached an implied contract to employ her at Carver School for one year. First, she points to an Illinois statute providing that if a school on probation (like Carver) fails to make improvements "after a maximum of one year," its principal may be fired. 105 ILCS 5/34-8.3. But this simply articulates one consequence a school may face after poor academic performance; it does not guarantee one year's employment to the principal of a school on probation. The statute has nothing to do with the terms of employment for principals.

Second, Taylor argues that she had an implied one-year contract because Mohip, who offered her the position, had both the actual and apparent authority to form an employment contract, and he did so when he said that she "should expect" to remain at Carver for "at least one year." To begin, Mohip had no actual authority because, by statute, only the Board can hire principals. *See* 105 ILCS 5/34-8.1. Further, under Illinois law, a municipal entity (which includes the Board) cannot be bound based on the apparent authority of an agent. *Patrick Eng'g, Inc. v. City of Naperville*, 976 N.E.2d 318, 330 (Ill. 2012). In any event, Illinois courts presume that oral employment contracts are at will unless the length of the contract is "clear and definite." *Robinson v. BDO Seidman, LLP*, 854 N.E.2d 767, 770 (Ill. App. Ct. 2006). Here, the duration of the purported contract was not definite because Mohip's statement that she "should expect" to be principal for a certain period lacked certainty, and his assurance that the position would last for "at least one year" did not set any specific length of time. *See Wilder v. Butler Mfg. Co.*, 533 N.E.2d 1129, 1131 (Ill. App. Ct. 1989) (informal expressions of goodwill and hope are not definite).

Taylor also contends that, under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, the Board owes her wages from when it discharged her from Owens and Gompers through the end dates of her contracts. But Taylor's claim fails because a worker bringing a claim under the Act must show that she performed unpaid work under a contract or agreement, and Taylor did no work at either school after she was fired. *See Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016). Unpaid (earned) wages are not the same as front pay, a form of compensatory damages.

Next, Taylor argues that the district court incorrectly determined that she could not sue Saffold in her individual capacity under § 1981. Although we have held that § 1981 does not permit suits against state actors in their official capacities, *Campbell v. Forest Pres. Dist. of Cook Cnty.*, 752 F.3d 665, 671 (7th Cir. 2014), we have not addressed whether actions against state actors in their individual capacities are allowed. Taylor's claim fails either way. The standard of liability under § 1983 also applies to § 1981 claims. *Sommerfield v. Knasiak*, 967 F.3d 617, 622 (7th Cir. 2020). And in deciding Taylor's § 1983 claim, the district court correctly determined that Taylor presented no evidence that similarly situated individuals who were not of her race or gender were treated more favorably, nor did she submit other circumstantial evidence that would allow a reasonable inference that racial or gender discrimination motivated her removals. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 897 (7th Cir. 2018).

Two issues remain. First, Taylor argues that the district court abused its discretion when it denied her motion to reconsider under Rule 59(e) of the Federal Rules of Civil Procedure. But the court did not abuse its discretion because Taylor did not submit newly discovered evidence, nor did she demonstrate a manifest error of law or fact because no reasonable juror could find that the Board breached her Owens Academy contract. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 953 (7th Cir. 2013). Second, Taylor argues that the court abused its discretion when it declined to excuse her, based on her current indigence, from paying the Board's costs. *See Baker v. Lindgren*, 856 F.3d 498, 502 (7th Cir. 2017). But the court properly considered *Rivera v. City of Chicago*, 469 F.3d 631, 634–35 (7th Cir. 2006), which required it to assess not only whether Taylor could pay costs now but also whether she could pay costs in the future. Taylor, who represented to the district court that she was actively seeking new employment, does not explain why she could not be expected to pay the costs in the future.

We have considered Taylor's remaining arguments, and none has merit.

AFFIRMED