In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3154

MICHAEL STAMPLEY,

*Plaintiff-Appellant,*

*v.*

ALTOM TRANSPORT, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14-cv-03747 — **Manish S. Shah**, *Judge.*

SUBMITTED APRIL 9, 2020[*] — DECIDED MAY 1, 2020

Before BAUER, FLAUM, and KANNE, *Circuit Judges.*

FLAUM, *Circuit Judge.* This case demonstrates the wisdom of the old Russian proverb popularized by President Reagan: "Trust, but verify." Michael Stampley, the owner-operator of a tractor-trailer, provided hauling services for Altom

---

[*] We have elected to decide this appeal without oral argument as the briefs and record adequately present the facts and legal arguments. *See* Fed. R. App. P. 34(a)(2)(C).

Transport, Inc. Altom agreed to pay Stampley 70% of the "gross" revenues that it collected for each load he hauled. Altom also agreed to give Stampley a copy of the "rated freight bill" or a "computer-generated document with the same information" to prove that it had properly paid Stampley for each load. Importantly, the contract granted Stampley the right to examine any underlying documents used to create a computer-generated document. Regardless of whether Stampley exercised that right, however, the contract required him to bring any dispute regarding his pay within thirty days.

Several years after he hauled his last load for Altom, Stampley filed a putative class action lawsuit alleging that Altom had shortchanged him and similarly situated drivers by not paying them a portion of the gross revenues it had collected on their loads. The district court eventually certified a class and held that Altom's withholdings had indeed violated the terms of the contract. However, concerned that the provision requiring all contests to his pay be made within thirty days would bar his claim, Stampley moved for summary judgment on that issue before the class received notice.

The district court subsequently denied Stampley's motion for summary judgment and granted Altom's motion to decertify the class. It also later granted Altom's motion for summary judgment and held that Stampley's individual claims were barred. Stampley now appeals both the district court's decertification order and the entry of summary judgment for Altom. For the reasons explained below, we affirm.

## I. Background

Stampley owns and operates his own semi-tractor. Altom is an interstate motor carrier that leased Stampley's equipment and services during two separate periods, most recently from September 2012 to March 2014. The Motor Carrier Act of 1980, Pub. L. No. 96-296, 94 Stat. 793, and the regulations promulgated thereunder govern the relationship between owner-operators like Stampley and carriers such as Altom. Those rules required that the agreement between Stampley and Altom contain certain terms.

For example, 49 C.F.R. § 376.12(d) compels contracts between parties like Altom and Stampley to specify exactly how owner-operators like Stampley are to be paid. Specifically, the regulation directs:

> [t]he amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease. … The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease….

*Id.*

Likewise, to allow drivers like Stampley to verify they received the right pay, § 376.12(g) ("the Truth-in-Leasing regulations" or "TIL") requires carriers like Altom to supply drivers "a copy of the rated freight bill, or, in the case of contract carriers, any other form of documentation actually used for a

shipment containing the same information that would appear on a rated freight bill." *Id.* § 376.12(g). The TIL also demand that drivers be permitted:

> to examine copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed, provided that where rates and charges are computed from a contract of a contract carrier, only those portions of the contract containing the same information that would appear on a rated freight bill need be disclosed.

*Id.*

In light of these requirements, the parties' contract guaranteed that Stampley would be paid 70% of gross revenues. The contract also included the following provision, as required by the TIL:

> In order that [Stampley] may verify the accuracy of all payments made pursuant to this Agreement, where payment is predicated upon a percentage of gross revenues, ALTOM TRANSPORT shall present [Stampley] with copies of rated freight bills, or a computer-generated document containing all of the same information, for all shipments transported in or with Equipment leased pursuant to this Agreement. [Stampley] shall have the right to examine copies of ALTOM TRANSPORT's tariffs or rate schedules at ALTOM TRANSPORT's home office during reasonable business hours. In those

> circumstances when [Stampley] is given a computer-generated document rather than a copy of a freight bill, [Stampley] shall have the right to examine the source document(s) from which such computer-generated information was compiled, under the same conditions. However, ALTOM TRANSPORT shall have the right to block out or obliterate all references on such freight bills, source document(s), tariffs and rate schedules as to the identity of customers, shippers and consignees. [Stampley] shall have thirty (30) days from receipt to contest, in writing, the information contained on any rated freight bill or computer-generated document. Following this thirty (30) day period, [Stampley] shall waive all rights to contest the validity or accuracy of any/all payments made pursuant to this Section 9.

Altom elected to equip Stampley with computer-generated documents, rather than copies of rated freight bills, for the entire period of the contract. None of the documentation, however, contained information regarding the tank washes that Altom charged its clients for.[1] Likewise, the revenue from these tank washes was not included in the "gross" revenues of which Stampley was entitled to receive 70%. Importantly, however, Stampley never contested any of his pay within thirty days of receiving the computer-generated documents associated with each payment. Nonetheless, when he later

---

[1] A tanker-trailer carried all the loads that Stampley drove for Altom, which often must be washed before used to carry another load.

discovered Altom's omissions, Stampley filed this putative class action seeking to recover the additional pay.

At the same time he filed his complaint, Stampley moved for class certification. Altom answered, denying the material grounds for liability and asserting its own counterclaim. Stampley answered Altom's counterclaim and moved for summary judgment on the same claim a week later. Stampley also filed a memorandum and multiple exhibits in support of his motion to certify a class at that time.

Several months later, Stampley filed a "renewed" motion for class certification that was identical in all material respects to the first. In view of that filing, the district court dismissed the first motion for class certification as moot. The case transferred from Judge Bucklo to Judge Shah less than a week later. Judge Shah subsequently entered a minute order that, among other things, (1) ordered Stampley not to file any further class certification motions and (2) set a consolidated briefing schedule for the pending renewed motion for class certification and motion for summary judgment. The case then proceeded into fact discovery.

Shortly thereafter, Stampley moved to amend and limit the class definition to those owner-operators who hauled shipments "for which Altom collected payment for tank washes." He explained that the tank wash amounts "ma[de] up the overwhelming common issue to the class." The court took this motion under advisement along with the two other pending motions, all of which it resolved in September 2015.

While it denied Stampley's motion for summary judgment on Altom's counterclaim, the district court granted the motion to certify the class in part, certifying the following class:

> All equipment owner-operators in the United
> States who, during the period June 15, 2010 to
> the present, had or have owner-operator agree-
> ments that identify Altom Transport, Inc. as the
> carrier, hauled shipments pursuant to such
> agreements for which Altom collected payment
> for tank washes, and who did not object within
> 30 days of payment for such hauls to the exclu-
> sion of the tank-wash funds from "gross."

This remained the class definition until the court decertified the class in February 2018.

After Altom unsuccessfully moved for summary judg-ment on the grounds that "gross" excluded any money Altom received from tank-wash charges, it moved to decertify the class, arguing that given the question of whether "gross" in-cluded tank washes had been decided in Stampley's favor, common issues no longer predominated in the case. All that was left, according to Altom, were individual determinations as to why each class member had not given notice during the required thirty-day period. Amid briefing on that motion, Stampley filed another motion for summary judgment assert-ing that the 30-day notice period did not apply at all. Altom responded by noting that Stampley's motion violated the rule against one-way intervention. Stampley subsequently moved to stay the briefing until after the class had received notice; however, the court denied the motion.

In February 2018, the court denied Stampley's motion for summary judgment and granted Altom's motion to decertify the class. After a motion for reconsideration and an attempt to substitute a new class representative failed, Altom moved for

summary judgment on Stampley's individual claims. The district court granted that motion, denied a putative class member's motion to intervene, entered judgment in Altom's favor, and dismissed Altom's counterclaim for lack of supplemental jurisdiction. Stampley now appeals, arguing that the district court abused its discretion by decertifying the class, and erred in granting Altom's motion for summary judgment.

## II. Discussion

As an initial matter, we review a district court's grant of a motion for summary judgment de novo, interpreting all facts and drawing all reasonable inferences in favor of the nonmoving party. *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 928 (7th Cir. 2018). Regarding decisions to certify or decertify a class, we review them for an abuse of discretion. *See Payton v. Cty. of Carroll*, 473 F.3d 845, 847 (7th Cir. 2007). Such an abuse may occur "when a district court commits legal error or makes clearly erroneous factual findings." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015). "Our review is deferential, but exacting: 'A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites' for class certification have been met." *Id.* (quoting *CE Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011)).

### A. Decertification

Although Altom moved to decertify the class on a host of grounds, the district court elected to grant the motion only on the basis that Stampley was an inadequate class representative. Thus, we turn our attention to that question.

It is well-established that a district court must find that "the representative parties will fairly and adequately protect

the interests of the class" before it may allow a case to proceed. Fed. R. Civ. P. 23(a). "A named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *CE Design Ltd.*, 637 F.3d at 726.

Here, the district court focused on Stampley's decision to move for summary judgment on whether the contract's 30-day dispute period barred his claim. The district court first noted, correctly, that Stampley's decision to do so before notice had gone out to the class raised the specter that the class would have to be decertified pursuant to the rule of one-way intervention. *See, e.g., Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1058 (7th Cir. 2016) (urging "plaintiffs to exercise caution when seeking a ruling on the merits of an individual plaintiff's claim before the district court has ruled on class certification"). The district judge then explained that, given those possible repercussions, he understood the motion as an attempt to expand the class by procuring a ruling that drivers like Stampley, who admitted that he had never attempted to contest his payments, did not in fact have to contest the payments within thirty days to proceed with the suit.[2] Considering that fact, the court determined that Stampley no longer had any interest in representing the class as certified.

We cannot conclude that the representation finding was an abuse of discretion. The record shows that Stampley clearly focused on protecting his own claim against a contractual defense, rather than representing the class as constituted. In-

---

[2] This was also supported by a discussion on the record at a status hearing.

deed, the record consistently supports the district court's understanding that the motion for summary judgment prior to class notice was an attempt to moot the need for that notice, taking into account that the class would be amended and expanded if Stampley had been successful. Thus, the district court did not abuse its discretion in finding Stampley an inadequate class representative and decertifying the class. With that, we turn to the substance of Stampley's summary judgment motion.

### B. Summary Judgement

Although Stampley made multiple arguments before the district court as to why the 30-day dispute period did not bar his claim, the only question on appeal is whether or not the contract required Stampley to challenge his payments within thirty days of receiving them, even if the documents he received did not include all the information they were supposed to. The district court ruled that his failure to do so barred his claims.[3] We agree.

"[T]he interpretation of an established written contract is generally a question of law for the court …." *Int'l Prod. Specialists, Inc. v. Schwing Am., Inc.*, 580 F.3d 587, 594 (7th Cir. 2009). And we must interpret the contract according to the law of the state in which the contract was formed. *See Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998). Here, there is no dispute that Illinois law therefore controls.

In Illinois, "[t]he primary objective in construing a contract is to give effect to the intent to the parties." *Gallagher v. Lenart*,

---

[3] Stampley does not dispute that if his contractual claim is barred, his other claims are also barred given they derive from the contract.

874 N.E.2d 43, 58 (Ill. 2007). We "must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Id.* Similarly, "a contract must be construed as a whole, viewing each part in light of the others." *Id.*

In any contractual dispute, "the threshold inquiry is whether the contract is ambiguous." *Bourke*, 159 F.3d at 1036 (citing *Ford v. Dovenmuehle Mortg. Inc.*, 651 N.E.2d 751, 755 (Ill. 1995)). "A contract will be considered ambiguous if it is capable of being understood in more sense than one." *Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991). "However, a contract is not rendered ambiguous merely because the parties disagree on its meaning." *Thompson v. Gordon*, 948 N.E.2d 39, 48 (Ill. 2011). Importantly, we must resolve any ambiguity in a contract against the drafter—here, Altom. *See Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 368 (Ill. 1998). But we cannot read a contract provision into a nullity. *See Thompson*, 948 N.E.2d at 47 ("A court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used."). We now address the parties' contract.

Within 15 days of Stampley's submission of the necessary documents, Altom was "to settle with [Stampley] with respect to services provided under this Agreement." To ensure that Stampley could verify the accuracy of all payments to him—and as required by the TIL, *see* 49 C.F.R. § 376.12(g)—the contract contained a provision ("the Inspection Clause") that specified:

> where payment is predicated upon a percentage
> of gross revenues, ALTOM TRANSPORT shall

> present [Stampley] with copies of rated freight bills, or a computer-generated document containing all of the same information, for all shipments transported in or with Equipment leased pursuant to this Agreement. … In those circumstances when [Stampley] is given a computer-generated document rather than a copy of a freight bill, [Stampley] shall have the right to examine the source document(s) from which such computer-generated information was compiled [at ALTOM TRANSPORT's home office during reasonable business hours.]

That said, the contract also contained a provision (the "30-Day Clause") that put a limit on Stampley's ability to contest any payment made to him:

> [Stampley] shall have thirty (30) days from receipt to contest, in writing, the information contained on any rated freight bill or computer-generated document. Following this (30) day period, [Stampley] shall waive all rights to contest the validity or accuracy of any/all payments made pursuant to Section 9.

Stampley only ever received computer-generated documents with his pay and never disputed or requested to view the source documents within thirty days. Thus, Stampley may only proceed with his claim if the 30-Day Clause does not apply to bar his claim.

Unlike as he did below, Stampley does not argue that the 30-Day Clause is unconscionable and therefore void on public policy grounds. Rather, he argues only that, because of the

context of the contract's language and the TIL under whose shadow it was bargained, the 30-Day Clause cannot apply, seeing that Altom did not deliver a computer-generated document "containing all of the same information" as the rated freight bill, *i.e.* they omitted the tank wash charges Altom collected.

At first glance, there appear to be two different ways to read the contract. The first way, which Stampley champions, reads the 30-Day Clause to mean that the 30-day dispute period only begins once Altom furnishes Stampley with the rated freight bill or a computer-generated document containing *exactly* the same information as the rated freight bill submitted to Altom's client, with a few specific exceptions. With respect to the specific language of the contract, it would have us add "containing all the same information" after "document" in the 30-Day Clause. By contrast, the view advanced by Altom and adopted by the district court reads the 30-Day Clause as beginning to run as soon as Stampley receives any "rated freight bill" or any "computer-generated document," regardless of whether or not the computer-generated document reflects exactly the same information as the rated freight bill.

Stampley urges us to pick the first, contending that his reading is consistent with the rest of the contract, as well as the TIL. The problem with Stampley's view is that it would essentially eviscerate the 30-Day Clause. Under Stampley's approach, even the slightest change from the rated freight

bill[4] to the computer-generated document—even a scrivener's error—would leave the 30-Day Clause inapplicable and allow Stampley to challenge his pay at any time.

We cannot analyze a contract to annul any part of it, so we must read the 30-Day Clause such that the 30-day period began to run as soon as Stampley received any computer-generated document purporting to have the same information as the rated freight bill would have. Indeed, the plain language of the 30-Day Clause calls for the same result. It states that it applies to "any/all payments made pursuant to Section 9," necessarily including those paid in conjunction with Stampley's receipt of a computer-generated document that lacked the same information as the rated freight bill.

This result allies with our recent decision in *Mervyn v. Atlas Van Lines, Inc.*, which held that a similar clause—"Financial entries made by Ace on payment documents shall be conclusively presumed correct if not disputed by Mervyn within 30 days after distribution"—barred the driver from later disputing his payments, despite his contention that they contained inaccurate information. 882 F.3d 680, 684–85 (7th Cir. 2018) (brackets omitted). We agree with the district court that "the parties bargained for a limited window of time to have payment disputes and [Stampley] was bound to that bargain" regardless of whether the computer-generated document Stampley received contained all the information within the rated freight bill. Stampley's counterarguments are unpersuasive.

---

[4] "Rated freight bill" is a term that neither the contract nor TIL ever defines but appears to be colloquially understood as referring to the total invoice submitted to Altom's customers.

*First*, Altom's provision of an insufficient computer-gener-
ated document neither prevented Stampley from exercising
his right under the Inspection Clause to examine the underly-
ing documents, nor from challenging his payments. The In-
spection Clause allowed Stampley to ensure that his pay-
ments included 70% of all the charges Altom collected for
each load, not just 70% of what Altom claimed he was entitled
to collect from. Indeed, that aligns with the goal of the Truth-
in-Leasing regulations, which were enacted "to promote the
stability and economic welfare of the independent trucker
segment of the motor carrier industry, and to eliminate or re-
duce opportunities for skimming and other illegal practices."
Lease and Interchange of Vehicles, 43 Fed. Reg. 29,812 (July
11, 1978).

Thus, although Altom certainly had an obligation to pro-
vide Stampley with an appropriate computer-generated doc-
ument, Stampley had the ability to verify that document and
the obligation to raise any disputes to his pay within thirty
days. Stampley could therefore either simply *trust* the docu-
ments he received or inspect the underlying documents to *ver-
ify* they were correct. The record and his argument on appeal
demonstrates that Stampley knew the tank washes were tak-
ing place, and consequently could have verified whether they
were included in his pay by reviewing the underlying docu-
ments as he was entitled to. At that point, he could have chal-
lenged their exclusion, so long as he did so within thirty days
of each payment.[5] By choosing simply to trust the documents

---

[5] But, as we suggest *infra*, if those underlying documents were fabri-
cated or altered to mislead Stampley, that would likely significantly
change our analysis. Nothing in the record before us, however, indicates
fraud here.

he received, and not to verify them, or to challenge the exclusion of tank wash funds from his payments until long after the 30-day period expired, Stampley has forfeited his opportunity to do so now.

*Second*, because Stampley admits that he never requested the underlying documentation for any of the computer-generated documents he received, the hypothetical situation in which Altom would have brought him the wrong documents even if he had asked for them cannot save his claim. If Altom had in fact given Stampley insufficient or altered documents after he invoked his rights under the Inspection Clause, that fraud could be grounds for excusing his failure to exercise his right to challenge the payment within thirty days. But those are not the facts here, and a hypothetical situation without support in the record cannot save Stampley's claim now.

*Third*, and finally, nothing in the Truth-in-Leasing regulations militates a different result. As noted above, the TIL were designed to reduce the power imbalance between interstate carriers and owner-operators. While the contract appears to be weighted heavily in Altom's favor, it is not unconscionable. The contract gave Stampley thirty days to contest any payment he received, and while that is not long, Stampley has abandoned any argument that the period is unconscionable. Similarly, nothing about the contract or Altom's payments to Stampley suggests that Altom was making a provisional payment to Stampley. Altom paid what it believed it owed Stampley, without condition. Stampley then had 30 days to check that payment was correct, and if he believed it was not, to challenge it in writing. The fact that he later realized Altom should have been paying him for the tank washes it charged

its customers for under the contract does not change our conclusion.

### III. Conclusion

For the reasons stated above, we AFFIRM the district court's decertification order and entry of summary judgment for Altom.