> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 20, 2021[*]
Decided April 20, 2021

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

| | |
|---|---|
| No. 20-1045 | |
| | Appeal from the United States District Court |
| REWARDS NETWORK | for the Northern District of Illinois, |
| ESTABLISHMENT SERVICES, INC., | Eastern Division. |
|     *Plaintiff-Appellee*, | |
| | |
|     *v.* | No. 16 C 9952 |
| | |
| PHILIP LAJAUNIE, | John Z. Lee, |
|     *Defendant-Appellant*. | *Judge*. |

**O R D E R**

Philip Lajaunie sold a percentage of his two restaurants' future credit card receivables to Rewards Network Establishment Services for $600,000, and accepted personal liability for the transaction, which was essentially a business loan. Very soon after the sale, however, one of the restaurants closed and, a few months later, the other

---

[*] We previously dismissed the appeal as to defendant-appellee La Boucherie, Inc. because it did not appear through counsel as we directed. App. Doc. 20, Dismissal Ord. (July 1, 2020). We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

filed for bankruptcy. Rewards Network sued Lajaunie and the company through which he owned one of the restaurants for breach of contract. The district court entered a default judgment against the restaurant after it failed to appear through counsel, and it later entered summary judgment against Lajaunie, concluding that he was personally liable to Rewards Network. Lajaunie appeals, arguing that the court wrongly entered default judgment against the company and erred by enforcing his personal liability agreement. But Lajaunie, who is pro se, cannot appeal on behalf of the company. And we agree with the district court that he owes Rewards Network under the personal liability agreement. Thus, we affirm.

Lajaunie was the principal and sole owner of La Boucherie, Inc. and 15 John Corporation, the parent companies of two restaurants, Les Halles and Les Halles Downtown, in New York City. In March 2016, the companies sold $768,000 of the restaurants' future credit card receivables to Rewards Network, a Chicago-based company, in exchange for a $600,000 lump-sum payment. As part of the purchase agreement, the companies represented that the restaurants were meeting all current liabilities, had assets in excess of their liabilities, expected to remain open for at least one year, and were not contemplating bankruptcy. The agreement specified that if a restaurant closed or filed for bankruptcy within 45 days of its execution, Rewards Network would presume that a material misrepresentation had been made, consider the contract breached, and seek payment of all outstanding sums. The contract also provided that the two companies were jointly and severally liable for any breach.

At the time of the purchase, Lajaunie signed a personal liability agreement securing the contract between the restaurant companies and Rewards Network. He "personally agree[d] to be immediately liable to Rewards Network for any and all sums due . . . occasioned by an Event of Non-Performance" of the purchase agreement. Material misrepresentations are listed as events of Non-Performance. Under the personal liability agreement, Lajaunie's liability was joint and several with the restaurants' and was "continuing, irrevocable, unconditional."

Unbeknownst to Rewards Network, at the time of the agreements, Les Halles had been sued for nonpayment by suppliers and employees and was in eviction proceedings with its landlord. Lajaunie did not disclose these facts, and, just nine days after Rewards Network paid the $600,000, Les Halles closed. Five months later, the other restaurant filed for bankruptcy and was subsequently liquidated.

Invoking federal jurisdiction based on diversity of citizenship, Rewards Network sued Lajaunie and La Boucherie (the corporate owner of Les Halles) for breach of contract and fraud, seeking the full amount owed on the purchase agreement as well as the attorney's fees and costs it incurred in the other restaurant's bankruptcy. A week after the deadline to answer, *see* FED. R. CIV. P. 12(a)(1)(A)(i), Lajaunie wrote the court that he intended to proceed pro se, but Rewards Network moved for a default judgment under Federal Rule of Civil Procedure 55 against La Boucherie and Lajaunie. The district court held a status hearing and granted Lajaunie a 30-day filing extension. But it granted the motion for default judgment against La Boucherie, which had never appeared through counsel as required. Lajaunie then answered the complaint, and the litigation moved along.

Four months later, Lajaunie retained counsel for himself and La Boucherie, and counsel moved to vacate La Boucherie's default. FED. R. CIV. P. 55(c). The court orally denied the motion, explaining that "La Boucherie has failed to show good cause or quick action to correct its default" and that Rewards Network would be "significantly prejudiced" by vacating the default.

The district court also granted Rewards Network's motion for summary judgment with respect to its claim that Lajaunie was personally liable for the restaurants' breach of the purchase agreement. It concluded that La Boucherie's default operated as an admission of its liability under the purchase agreement, and that the company's breach triggered Lajaunie's personal liability. The court denied the summary judgment motion as to the claim of fraud, concluding that there were genuine issues of material fact regarding Lajaunie's knowledge and intent. Rewards Network then voluntarily dismissed the fraud claim, leading to the entry of a final judgment.

On appeal, Lajaunie first seeks to challenge the default judgment. He cannot. That judgment was entered against La Boucherie, not Lajaunie, so he has no standing to bring that challenge. *See In re IFC Credit Corp.*, 663 F.3d 315, 318 (7th Cir. 2011). For the same reason, Lajaunie may not challenge the denial of La Boucherie's motion to vacate its default. Nor can Lajaunie represent the company as its advocate. *See id.*

On to the question of Lajaunie's personal liability for La Boucherie's breach. La Boucherie's default bound the court to "accept as true all factual allegations in the complaint," including that La Boucherie materially misrepresented facts about its solvency and therefore breached the contract. FED. R. CIV. P. 8(b)(6); *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 948 (7th Cir. 2020). All that

remained was to determine the amount of damages and the extent of Lajaunie's liability for them. *See Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012) ("Damages must be proved unless they are liquidated or capable of calculation."). We review Lajaunie's challenges to the court's decision on his personal liability de novo. *Horne v. Elec. Eel Mfg. Co., Inc.*, 987 F.3d 704, 713 (7th Cir. 2021).

Lajaunie first contends that the text of the personal liability agreement is ambiguous and therefore unenforceable against him. But he did not raise that argument in the district court. In fact, he conceded in open court that, if the personal liability agreement were enforceable, he would be liable under its terms. Instead, he argued that the personal liability agreement was never "triggered." It is too late to argue that the contract is unclear. *See id.* at 722.

Next, Lajaunie reprises his argument that Rewards Network could not enforce his personal liability agreement without proof of fraud. His interpretation of the personal liability agreement primarily rests on an email exchange he had with a Rewards Network representative a week before he signed, discussing how it differed from a personal guaranty that the parties had previously discussed, but Lajaunie would not sign. The representative stated that "any outstanding balance [would be] owed only if fraud takes place." (He also explained that the "language in" the agreements controlled and urged Lajaunie to ask questions at a follow-up meeting.)

Although the emails might explain Lajaunie's own state of mind, they are irrelevant to the text of the contract that he signed—while represented by counsel. All agree that Illinois law governs the dispute, under which we "must initially look to the language of [the] contract alone," and give that language its "plain and ordinary meaning." *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 586 (7th Cir. 2020) (citation omitted). Because the "face of the document" is unambiguous, we consider it, and not the emails, the final expression of the parties' intent. *See Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884–85 (Ill. 1999) (declining to "look beyond the contract for some hidden ambiguity" if it is facially unambiguous). And that agreement clearly states that Lajaunie would be "immediately liable . . . for any and all sums due . . . in event of Non-Performance." The purchase agreement, in turn, defines material misrepresentations as events of Non-Performance.

So, Lajaunie is not wrong to contend that proof of fraud (a material misrepresentation by either company with respect to the purchase agreement) was required to "trigger" his personal liability. What he is missing is that Rewards Network

proved it: the default judgment establishes that La Boucherie made material misrepresentations and therefore breached the contract. La Boucherie waived any defenses by failing to appear, and the district court had "no duty to resurrect" them for purposes of assessing Lajaunie's own liability. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 601–02 (7th Cir. 2007). In light of La Boucherie's breach, the straightforward language of Lajaunie's personal liability agreement applies.

Lajaunie's argument that Rewards Network must "establish an actual violation of any of the[] representations by Lajaunie"—and cannot do so because of his subjective belief in his restaurants' solvency—has no basis in the law. Lajaunie's subjective beliefs about his restaurants' financial health and prospects at the time of contracting, just like his beliefs about the extent of his personal exposure, are irrelevant. *See Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 711 (7th Cir. 2019) (surveying cases); *see also Stampley*, 958 F.3d at 586 ("a contract is not rendered ambiguous merely because the parties disagree on its meaning") (citation omitted).

We have considered Lajaunie's other arguments, and none has merit.

AFFIRMED