In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 24-1258 & 24-1259

GREAT WEST CASUALTY CO.,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

NATIONWIDE AGRIBUSINESS INSURANCE CO., and CONSERV FS, INC.,

*Defendants-Appellants, Cross-Appellees,*

and

TIMOTHY A. BRENNAN, as Administrator of the Estate of Patrick J. Brennan, deceased,

*Defendant.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 23-cv-2178 — **Matthew F. Kennelly**, *Judge.*

_____

ARGUED SEPTEMBER 26, 2024 — DECIDED FEBRUARY 11, 2026

_____

Before EASTERBROOK, ST. EVE, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge*. Great West Casualty Company ("Great West") and Nationwide Agribusiness Insurance Company ("Nationwide") collectively insured a tractor-trailer involved in an unfortunate collision with a passenger vehicle driven by Patrick J. Brennan. The side-impact collision killed Brennan, prompting his estate's wrongful death suit against various entities in state court. The insurers agree that both of their policies provide coverage, but filed the underlying declaratory judgment action to determine which policy pays first. The district court concluded that the companies have equal payment priority. For the reasons provided below, we affirm.

## I.   BACKGROUND

### A. Facts

The auto accident underlying this case occurred on June 2, 2021, near Sycamore, Illinois. A tractor-trailer driven by Robert D. Fisher collided with an SUV driven by Patrick J. Brennan, killing Brennan. Fisher was an agent of Deerpass Farms Trucking, LLC-II ("Deerpass Trucking").

Deerpass Trucking is an interstate motor carrier that provides transportation services. It, however, owned neither the 2014 Kenworth tractor nor the 1989 Sunshine tanker trailer involved in the underlying collision. It leased the tractor from Deerpass Farms Services, LLC ("Deerpass Farms") pursuant to an Independent Contractor Equipment Lease Agreement ("Deerpass Lease"), signed on August 1, 2020. And the trailer was owned by Conserv FS, Inc. ("Conserv"). Deerpass Trucking hauled cargo and empty trailers for Conserv pursuant to a Trailer Interchange Equipment Use Agreement ("Interchange Agreement"), signed January 12, 2021.

The tractor and trailer were both insured with commercial liability insurance. Great West insured the tractor with a $1 million policy limit with the policyholder, Deerpass Trucking. Nationwide insured the trailer with a $2 million policy limit to Conserv.

On October 12, 2021, Brennan's estate brought a wrongful death suit in Illinois state court, eventually adding Fisher, Deerpass Trucking, Deerpass Services, and Conserv as defendants. On April 6, 2023, Great West sued Nationwide in federal court seeking a declaratory judgment precipitating this appeal. Before we elaborate on the district court proceedings, we briefly introduce the insurance contracts that lay the foundation for Great West and Nationwide's dispute over their coverage responsibilities.

## B. The Insurance Policies

Great West and Nationwide agree that each of their policies cover Fisher, Deerpass Trucking, and Conserv. The Great West policy provided coverage with a $1 million limit per accident or loss. The Great West policy covers Deerpass Trucking because Deerpass Trucking is the policyholder.

The policy also insures anyone using a "covered auto" with Deerpass Trucking's permission. Under Great West's policy, an "insured" is defined as "[t]he *owner* or anyone else from whom you *hire or borrow* a covered 'auto' that is a 'trailer' while the 'trailer' is connected to another covered 'auto' that is a power unit, or, if not connected, is being used exclusively in your business." The parties agree that the tractor was a "covered auto" under the Great West policy, that Fisher is "insured" because he was operating the tractor with the permission of Deerpass Trucking, and that Conserv is "insured"

because it owned the trailer coupled to the tractor. Thus, the Great West policy covers Deerpass Trucking (the policyholder), as well as Conserv (the trailer owner) and Fisher (the operator).

Nationwide's policy similarly covers all three entities using similar definitions used in the Great West policy. It covers Conserv as the policyholder. It also covers anyone "using with [Conserv's] permission a covered 'auto'" that Conserv owned, so both Deerpass Trucking and the operator, Fisher, were covered under the Nationwide policy as well. The Nationwide policy provided coverage with a $2 million limit per accident or loss.

Both policies contemplate an insured's ability to collect coverage payments from multiple insurers by distinguishing between "primary" coverage and "excess" coverage. The distinction is simple but at the core of this case: when an entity is covered by two policies, the policy providing primary coverage pays first (up to the policy limit). Only after the primary policy has paid does the excess coverage kick in.[1] To understand the parties' coverage dispute, we examine the "Other Insurance" provisions from each policy.

### 1. Nationwide's "Other Insurance" Section

a.      For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is

---

[1] *See* Sean Ross, *Understanding Insurance vs. Excess Insurance vs. Reinsurance*, INVESTOPEDIA (Aug. 10, 2023), https://www.investopedia.com/articles/personal-finance/081116/insurance-excess-insurance-and-reinsurance-whats-difference-all.asp.

excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this coverage Form provides for the "trailer" is:

> (1) Excess while it is connected to a motor vehicle you do not own; or

> (2) Primary while it is connected to a covered "auto" you own.

Nationwide's coverage is "excess" coverage because, as the parties agree, paragraph 5.a(1) of Nationwide's "Other Insurance" provision applies here. This is because the policyholder, Conserv, owned a "covered auto"—the trailer—that was "connected to a motor vehicle [Conserv] do[es] not own"— the tractor. Next, we look at the relevant language from the "Other Insurance" section of the Great West policy.

> *2. Great West's "Other Insurance" Section*

> a. While any covered "auto" is hired or borrowed from you by another "motor carrier," this Coverage Form's Covered Autos Liability Coverage is:

> > (1) Primary if a written agreement between you as the lessor and the other "motor carrier" as the lessee requires you to hold the lessee harmless.

> > (2) Excess over any other collectible insurance if a written agreement between you as the lessor and the other "motor carrier" as

the lessee does not require you to hold the lessee harmless.

b.      While any covered "auto" is hired or borrowed by you from another "motor carrier" this Coverage Form's Covered Autos Liability Coverage is:

(1) Primary if a written agreement between the other "motor carrier" as the lessor and you as the lessee does not require the lessor to hold you harmless, and then only while the covered "auto" is used exclusively in your business as a "motor carrier" for hire.

(2) Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee requires the lessor to hold you harmless.

c.      While a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Covered Autos Liability Coverage is:

(1)        Provided on the same basis, either primary or excess, as the Covered Autos Liability Coverage provided for the power unit if the power unit is a covered "auto".

(2)        Excess if the power unit is not a covered "auto".

                         ***

    e.      Except as provided in Paragraphs a., b., c. and d. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you do not own.

***

    g.      Regardless of the provisions of Paragraphs a., b., c., d. and e. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract."

We will revisit these provisions as they become relevant to the analysis.

### C. Federal Proceedings

On April 6, 2023, a few weeks after Conserv was named as a defendant in the state court proceedings, Great West sued Nationwide and the Brennan estate's administrator in federal district court, eventually adding Conserv as a defendant in the federal case as well. Great West sought declaratory judgment as to the insurers' payment responsibilities towards the defense and liability costs of their mutual insured persons or entities: Deerpass Trucking (tractor-trailer lessee), Conserv (trailer owner), and Fisher (operator).

While Great West acknowledged that its policy covered all three entities, it specifically sought a declaration that its policy provided excess rather than primary coverage. Great West did not stop there—it contended that by operation of each policy's "Other Insurance" section, Great West's policy provided excess coverage over Nationwide's excess coverage because Great West's "Other Insurance" section specifies that in

certain scenarios Great West's coverage is "excess over any other collectible insurance." Nationwide counterclaimed, seeking a declaration that Great West's policy was primary, but that, if excess, it was not excess over Nationwide's coverage. Great West moved for summary judgment.

Exercising diversity jurisdiction and applying Illinois contract law,[2] the district court granted partial summary judgment in favor of Great West. The district court agreed that the Great West policy, like Nationwide's policy, provided "excess" coverage, but disagreed with Great West's assertion that its policy is "excess over" Nationwide. To reach the "excess" coverage determination, the district court found paragraph 5.b of Great West's "Other Insurance" provision governed because Deerpass Trucking had leased the tractor from Deerpass Farms, a "motor carrier" as defined in the policy. The Deerpass Lease relationship coupled with paragraph 5.b(2) and the policy's express language, "[e]xcess over any other collectible insurance," the district court reasoned, rendered the Great West policy "excess" not primary.

Next, the district court considered and rejected Nationwide's argument that paragraph 5.g of Great West's "Other Insurance" provision applied based on Deerpass Trucking's obligations under the Interchange Agreement with Conserv. That paragraph states that, regardless of anything in the preceding paragraphs, Great West's coverage is primary if the

---

[2] Great West is a Nebraska corporation based in Sioux Falls, Nebraska. Nationwide is an Iowa corporation based in Des Moines, Iowa. Conserv is an Illinois corporation based in Woodstock, Illinois. Timothy Brennan, administrator of the Brennan estate, is a Missouri citizen, and the decedent, Patrick Brennan, was a citizen of Illinois. (App. Dkt. 17, Nationwide Br., at 1); (App. Dkt. 20, Great West Br., at 1–2). *See* 28 U.S.C. § 1332.

policyholder assumed liability under an "insured contract." Nationwide argued that the Interchange Agreement between Deerpass Trucking and Conserv is such a contract, but the district court disagreed. Citing Illinois caselaw, the district court explained that an insured contract requires one party to assume the tort liability of the other, but that Deerpass Trucking had only "agreed to indemnify Conserv for liability arising from *[Deerpass Trucking's] own actions*." (emphasis in original). This did not meet the definition of an insured contract and therefore did not override paragraph 5.b(2) by triggering paragraph 5.g.

The court then rejected Great West's argument that "excess over any collectible insurance" in its policy makes its coverage "excess over" Nationwide's coverage. The court found the case Great West relied on to be distinguishable and noted the lack of any others supporting Great West's interpretation.

The district court concluded by ordering the parties to split defense and liability costs in proportion to their coverage limits, as they conceded was dictated by their respective policies.[3] Nationwide appeals, insisting that Great West's coverage is primary. Great West cross-appeals, renewing its arguments that its coverage is both excess and "excess over" Nationwide's coverage.

---

[3] The parties do not challenge the district court's conclusion that if both insurers were excess, under Illinois law, the insurers have equal payment priority paying proportionately according to their respective policy limits. For purposes of this appeal, we do not address the accuracy of this proposition.

## II.   DISCUSSION

### A.  Standard of Review

We review a district court's grant of summary judgment de novo and consider the facts and draw all inferences in the light most favorable to the nonmoving party. *Tech. Sec. Integration, Inc. v. EPI Techs., Inc.*, 126 F.4th 557, 560 (7th Cir. 2025). (citation omitted).

### B.  Applicable Law

Federal courts sitting in diversity apply the law of the forum state when interpreting contracts. *Hess v. Biomet, Inc.*, 105 F.4th 912, 917 (7th Cir. 2024). The parties agree that Illinois law governs this contract dispute, so we analyze their arguments according to Illinois law.

When construing policy language, Illinois courts apply the same rules applicable to contract interpretation. *Sproull v. State Farm Fire & Cas. Co.*, 184 N.E.3d 203, 209 (Ill. 2021). The "primary objective is to ascertain and give effect to the intent of the parties, as expressed in the policy language." *Acuity v. M/I Homes of Chicago, LLC*, 234 N.E.3d 97, 105 (Ill. 2023); *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 308 (7th Cir. 2021). We "look to the contract as a whole," adopting the most natural and reasonable reading of the contract. *Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014) (applying Illinois law); *Sproull*, 184 N.E.3d at 209.

Policy terms that are clear and unambiguous will be enforced as written unless doing so violates public policy. *State Farm Mut. Auto. Ins. Co. v. Elmore*, 181 N.E.3d 865, 871 (Ill. 2020). Ambiguity exists only where the policy language is susceptible to more than one reasonable interpretation. *Id.*

(citation omitted). Reasonableness is the cornerstone, as policy terms will not be deemed ambiguous simply because a term is undefined within the policy or because the parties can suggest creative possibilities for its meaning. *Id.* For it is the court's job "whenever possible … to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous." *Land of Lincoln*, 762 F.3d at 679; *see also Clanton v. Oakbrook Healthcare Ctr.*, 226 N.E.3d 1266, 1275 (Ill. 2023) (favoring contract interpretation that was most harmonious and "[did] not render any language superfluous"). But this principle is "not absolute." *Stone v. Signode Indus. Grp. LLC*, 943 F.3d 381, 387–88 (7th Cir. 2019). It is understood that some redundancy in insurance contracts is normal, but construing an endorsement to be completely superfluous is not. *Crescent Plaza*, 20 F.4th at 311 (quoting *Great W. Cas. Co. v. Robbins*, 833 F.3d 711, 717–18 (7th Cir. 2016)).

We turn to the analysis with these principles in mind. Recall that the district court concluded Nationwide and Great West both owe excess insurance coverage and therefore must pay a pro rata share proportionate to their coverage limits. We begin first by examining appellant Nationwide's contention the district court erred in determining Great West's coverage to be excess. We then turn to cross-appellant Great West's argument that its coverage is excess even to Nationwide's coverage.

## C. Great West's Coverage is Excess

Nationwide points to paragraphs 5.b and 5.g in Great West's "Other Insurance" provision to support its contention that Great West's coverage is primary, not excess.

  *1. Paragraph 5.b*

We begin with 5.b, reproduced below:

b.   While any covered "auto" is hired or borrowed by
     you from another "motor carrier" this Coverage
     Form's Covered Autos Liability Coverage is:

  (1) Primary if a written agreement between the
      other "motor carrier" as the lessor and you as
      the lessee does not require the lessor to hold you
      harmless, and then only while the covered
      "auto" is used exclusively in your business as a
      "motor carrier" for hire.

  (2) Excess over any other collectible insurance if a
      written agreement between the other "motor
      carrier" as the lessor and you as the lessee re-
      quires the lessor to hold you harmless.

The district court held that paragraph 5.b(2) applied, mak-
ing Great West's coverage excess. Nationwide seemingly con-
cedes that if paragraph 5.b applies, then paragraph 5.b(2)
would render Great West's coverage excess like Nationwide's
coverage. But Nationwide resists that conclusion by arguing
paragraph 5.b does not apply in the first place, for two rea-
sons.

First, Nationwide suggests paragraph 5.b's introductory
clause "hired or borrowed" is ambiguous. Nationwide main-
tains that the policyholder, Deerpass Trucking, *leased* the trac-
tor instead of hiring or borrowing it. According to Nation-
wide, leasing is distinct enough from hiring and borrowing
such that leasing a covered auto does not trigger paragraph
5.b. This argument is unpersuasive, however, by looking di-
rectly at the structure of paragraph 5.b itself, which clearly

contemplates the presence of a lease. Subparagraphs 5.b(1) and 5.b(2) both refer to a "lessor" and "lessee." Lessors and lessees, of course, are connected through a lease. If Nationwide is correct that paragraph 5.b does not apply when a tractor is leased, then neither subparagraph could ever be triggered, even though each refers exclusively to a lessor-lessee relationship. Our task is to "look to the contract as a whole in interpreting its individual terms," adopting the most natural and reasonable reading of the contract. *Land of Lincoln*, 762 F.3d at 679. The most natural reading—and indeed the only reading that gives subparagraphs 5.b(1) and 5.b(2) any meaning—is to interpret paragraph 5.b's triggering requirement that a covered auto be "hired or borrowed" to include leases.

Second, Nationwide challenges the applicability of paragraph 5.b on equity grounds. Paragraph 5.b(2) states that Great West's coverage is "excess over any other collectible insurance" if a contract between the lessor and lessee of the tractor "requires the lessor to hold [the lessee] harmless." Nationwide does not dispute that the Deerpass Lease, executed between Deerpass Farms (lessor) and Deerpass Trucking (lessee) requires that Deerpass Farms indemnify Deerpass Trucking. Instead, Nationwide argues that allowing the Deerpass Lease to trigger subparagraph 5.b(2)'s excess coverage clause without any input from Conserv, the trailer's owner, "allows an insurer to conspire with its insured and its insured's sister entity to affix insurance coverage as to a third party." Nationwide claims such an arrangement "smacks of trying to bind a third party" insurer into paying.

This argument is equally unpersuasive because it is completely "unsupported by law." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (explaining that such arguments

may be considered waived). There is no record evidence to support Nationwide's bare assertion that Deerpass Farms, Deerpass Trucking, and Great West conspired to author the Deerpass Lease such that Great West's coverage would be excess in this specific context. Nationwide provides no proof that this occurred, that such activity would even be illegal under Illinois contract law, or that Illinois courts would apply their equitable powers to intervene in such a scenario. Without more guidance, we cannot accept Nationwide's argument.

### 2. *Paragraph 5.g*

Nationwide also points to paragraph 5.g, contending that, regardless of paragraph 5.b, Great West's coverage is primary if an "insured contract" is involved:

> g. Regardless of the provisions of Paragraphs a., b., c., d. and e. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract."

An "insured contract" under the Great West policy extends to the "part of any other contract … under which you assume the tort liability of another to pay for 'bodily injury' or 'property damage' to a third party or organization."

The district court determined paragraph 5.g did not apply because Deerpass Trucking agreed to indemnify Conserv for claims arising from Deerpass Trucking. Nationwide resists this interpretation. According to Nationwide, the Interchange Agreement between Great West's policyholder, Deerpass Trucking, and the trailer owner, Conserv, is an "insured contract" because Deerpass Trucking agreed to assume Conserv's tort liability. As such, Deerpass Trucking's insurer

owes primary coverage, while Conserv's insurer—Nationwide—owes only excess coverage because Deerpass Trucking agreed to assume Conserv's tort liability. If Nationwide is correct, Great West's policy becomes the primary policy for coverage purposes.

The indemnity provision of the Interchange Agreement states in relevant part:

> *Except to the proportionate extent that any Losses are caused by the negligent acts or omissions of [Conserv]*, [Deerpass Trucking] hereby releases and agrees to indemnify, defend and hold harmless [Conserv] and its parent and corporate affiliates, and their respective officers, directors, insurers, agents, and employees from and against any and all claims, lawsuits, causes of action, judgments, expenses, fines, cost, losses, penalties, damages, liabilities and reasonable attorneys' fees for bodily injury (including injury resulting in death) and the loss of or damage to property (collectively, "Losses") arising out of or related to [Deerpass Trucking's] use, operation, maintenance, possession, or Interchange of [Conserv's] Equipment.

Great West counters Nationwide's interpretation by pointing to the first clause of the indemnity provision as evidence that the Interchange Agreement is not an "insured contract." Great West highlights that an "insured contract" requires one party to "assume the tort liability of another," and that the indemnity provision specifically carves out liability arising from Conserv's own negligence. According to Great West, Deerpass Trucking is not assuming *Conserv's* tort

liability, but rather agreeing to indemnify Conserv for Deerpass Trucking's own tort liability.

For support, Great West relies on *Hankins v. Pekin Insurance Co.*, 713 N.E.2d 1244 (Ill. App. Ct. 1999). That case concerned an indemnity provision in which the operator of a trucking terminal agreed to indemnify a motor freight carrier for liability arising out of "any work to be performed hereunder by [the operator]" or "caused in whole or in part by [the operator's] negligent act or omission." *Id.* at 1246. The definition of an insured contract in that case also required one party to "assume the tort liability of another." *Id.* at 1246–47. The Illinois Appellate Court decided that the indemnity provision did not count as an "insured contract" because the indemnity provision did not "clearly, explicitly, and unequivocally express the parties' intention that [the operator] would indemnify [the carrier] against [the carrier's] own negligence." *Id.* at 1248. The actual claims at issue in the underlying litigation did not matter—only the carveout language in the indemnity provision itself mattered most. *Id*. at 1247–49.

We agree with Great West's position. The Interchange Agreement plainly and explicitly carves out, from Deerpass Trucking's indemnification obligations, any proportion of liability "caused by the negligent acts or omissions of [Conserv]."

It may be true, as Nationwide points out, that the claims against Conserv in the underlying wrongful death litigation are "solely based upon the conduct of [Deerpass Trucking] and its agent, Robert Fisher," and "not any independent action of Conserv." We do not see how that is relevant. For construction purposes, the indemnity provision eliminates any indemnification for Conserv's own negligence. Whether or

not there is any such negligence to carve out is irrelevant to determining whether the Interchange Agreement is an "insured contract." Because the Interchange Agreement does not "clearly, explicitly, and unequivocally express the parties' intention that [Deerpass Trucking] would indemnify [Conserv] against [Conserv's] own negligence," it does not qualify as an "insured contract" within the meaning of the Great West policy. *See Hankins*, 713 N.E.2d at 1248. This embraces the Illinois Supreme Court's instruction that "when an indemnity contract expressly limits itself to the negligence of the indemnitor, courts will not strain[] … to read into that contract indemnification for an indemnitee's own negligence." *Buenz v. Frontline Transp. Co.*, 882 N.E.2d 525, 533 (Ill. 2008) (citing *Hankins*); *see id.* at 533–35 (examining indemnification provision without an explicit carveout for the indemnitee's own negligence).

Since we are applying Illinois law, we will not strain any further than Illinois courts would. We conclude, like the district court did, that the Interchange Agreement is not an insured contract within the meaning of paragraph 5.g of Great West's "Other Insurance" provision. That means paragraph 5.g does not override paragraph 5.b(2), which makes Great West's coverage excess. We therefore affirm the district court's determination that both Nationwide and Great West owe excess coverage.

### D. Great West's Coverage is Not "Excess Over" Nationwide

Turning now to Great West's cross appeal. So far, we have dealt with two levels of insurance coverage priority: primary and excess. Great West posits the existence of a third priority

level—"super excess"—which it claims renders its policy even more excess than Nationwide's policy.

Great West claims its policy is "super excess" because the applicable portion of the "Other Insurance" provision, paragraph 5.b(2), specifies that Great West's coverage is "[e]xcess *over any other collectible insurance.*" By contrast, the relevant part of Nationwide's "Other Insurance" provision ends at "excess." The parties concede that "excess over any other collectible insurance" is a commonly used phrase in motor carrier policies. Indeed, other parts of Nationwide's policy use the phrase, too. Commonality aside, Great West claims its policy must be deemed "super excess" over Nationwide's policy because there are slight differences.[4]

Great West relies most heavily on *Truck Insurance Exchange v. Liberty Mutual Insurance Co.*, 428 N.E.2d 1183 (Ill. App. Ct. 1981), as evidence that Illinois courts give effect to the phrase "excess over any other collectible insurance."[5] The district court rejected Great West's "super excess" argument and its reliance on *Truck Insurance Exchange* because the language in each policy is functionally the same and cancels each other out. And as Nationwide properly noted, *Truck Insurance Exchange* is readily distinguishable. In that case, the Illinois Appellate Court considered payment priority between a

---

[4] Oral Argument at 18:30.

[5] Great West cites several cases in which courts gave special effect to similar phrases but, as Nationwide points out, none of the cases involved a comparison between "excess" coverage and coverage that is "excess over any other collectible insurance." *E.g.*, *New Amsterdam Cas. Co. v. Certain Underwriters at Lloyds, London*, 216 N.E.2d 665, 665–68 (Ill. 1966); *U.S. Fire Ins. Co. v. Wilson Driveaway, Inc.*, 674 F. Supp. 640, 642 (N.D. Ill. 1987). (App. Dkt. 20 at 10–11); (App. Dkt. 25 at 12–13).

standard form policy with the disclaimer provision, "excess insurance over such other insurance" and a second policy with the disclaimer phrase, "excess insurance over any other valid and collectible insurance." *Id.* at 1184–85. The court concluded the first policy was excess to the second, a finding that did not depend on "super excess" language. *Id.* at 1185. Instead, the court looked at the terms of the lease between the two policyholders. *Id.* at 1184–85. Because the policyholders had already agreed upon insurance payment priority in the lease, and the appellant insurer had agreed to offer coverage subject to the lease, the lease controlled. *Id.*

We agree with the district court and Nationwide that the facts of *Truck Insurance Exchange* are markedly different from the facts here, where there is no comparable lease that independently establishes the insurers' priority of coverage. Without a direct response and no analogous cases for support, Great West falls back on contract interpretation principles to argue that construing Nationwide's "excess" language and Great West's "super excess" language identically ignores the Illinois Supreme Court's admonition against constructions that "render any language superfluous." *Clanton*, 226 N.E.3d at 1275. As we explained above, however, the rule against superfluous language is "not absolute." *Stone*, 943 F.3d at 387–88. "[I]t is a preference to be employed to the extent possible." *Id.* at 388; *see also id.* (noting that party's "superfluity argument at best cuts both ways"); *Land of Lincoln*, 762 F.3d at 679; *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1219 (Ill. 1992) (rule applies unless it "would render the clause or policy inconsistent or inherently contradictory"). Indeed, we have recognized that superfluous terms may appear in contracts because contract drafters "intentionally err on the

side of redundancy." *Sterling Nat'l Bank v. Block*, 984 F.3d 1210, 1218 (7th Cir. 2021) (citation and quotation omitted).

Considering this, we are persuaded that the "super excess" language in Great West's policy is merely an example of redundancy in contract drafting and not a command to recognize a never-before-seen "super excess" tier of insurance coverage. As Great West's counsel volunteered at oral argument, its claim that "all excess clauses are excess, but some are more excess than others" is, rhetorically speaking, somewhat Orwellian. *See* George Orwell, ANIMAL FARM 112 (1946) ("All animals are equal. But some animals are more equal than others.").[6] If Great West is correct, then simply claiming that one's coverage is "excess over any other collectible insurance" makes it so. Such a holding would lead insurers to update their policies to replace each instance of "excess" coverage with "super excess" coverage. Then what? Will Great West be back in court in a few years claiming that its coverage is double-, triple-, or even quadruple-"super excess"? We are reminded of the double-, triple-, and quadruple-dog dares children wield on the playground. Powerful rhetorically, but dares are of questionable legal force.

Even if we accepted Great West's argument, the "super excess" tier of coverage would render other parts of its policy difficult to understand. *See Stone*, 943 F.3d at 388. For example, paragraph 5.h contemplates the possibility that a court will determine whether Great West's policy "covers on the same basis, either excess or primary" as another insurance policy. That paragraph accounts for only two possible coverage bases—primary or excess—and does not even mention a "super

---

[6] Oral Argument at 19:30.

excess" tier, even though Great West has argued that "super excess" language is common in the industry and routinely given effect by the courts. Though Great West arguably had the power to fortify its policy with "super excess" wording, it chose not to do so in paragraphs 5.c and 5.e, which also distinguishes only between primary and excess coverage. On the other hand, when "excess" and "excess over all other collectible insurance" are viewed interchangeably, as we have interpreted it, Great West's policy becomes far less "inconsistent" and "inherently contradictory." *Outboard Marine Corp.*, 607 N.E.2d at 1219.

Fundamentally, insurance law and contract law are matters of state law. *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 586 (7th Cir. 2020). As a federal court sitting in diversity, our job is to apply Illinois law the way we think Illinois courts would apply it. *Hess*, 105 F.4th at 917. Great West has not persuaded us that Illinois courts would recognize a "super excess" level of liability insurance coverage, especially given the vacuum of evidence any other court has done so. We therefore decline Great West's invitation to do so here. Like the district court, we conclude that Great West and Nationwide have equal payment priority and must pay the amount proportionate to their respective coverage limits.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.